400 S.E.2d 888

## CITIZENS NATIONAL BANK OF ST. ALBANS

v.

**Troy E. DUNNAWAY, Constance L. Dunnaway, Glen B. Gainer, Commissioner of Forfeited and Delinquent Lands for the State of W. Va.; David L. Hill, Deputy Commissioner of Forfeited and Delinquent Lands of Putnam County; K.C. Hughes.**

### No. 19553.

Supreme Court of Appeals of West Virginia.

Dec. 19, 1990.

**454**

Henry R. Glass, III, Lovett, Cooper & Glass, Charleston, for Citizens Nat. Bank of St. Albans.

Parrish McKittrick, McKittrick & Parr, St. Albans, for Troy E. Dunnaway and Constance L. Dunnaway.

Roger W. Tompkins, Atty. Gen., Jacqueline A. Hallinan, Asst. Atty. Gen., Charleston, for Glen B. Gainer and David L. Hill.

Walter L. Wagner, Jr., Dunbar, for K.C. Hughes.

**PER CURIAM:**

Ostensibly this case presents a choice between two innocent parties, one of whom will lose his (its) interest in real property, because the county clerk failed properly to index a recorded deed of trust; however, because the property was sold to the State for delinquent taxes, the State also has a compelling interest.

The Citizens National Bank of St. Albans, the beneficiary of a recorded but improperly indexed deed of trust, appeals the Circuit Court of Putnam County's decision holding that even though the Bank received no individual notice before the property's sale for non-payment of taxes, its lien was extinguished by the tax sale and the subsequent sale by the State of West Virginia to K.C. Hughes created a fee simple interest unencumbered by any lien. The State, with due diligence could not identify the Bank's interest in the real property and, therefore, no individual tax sale notice to the Bank was constitutionally required. Accordingly we affirm the circuit court.

## I

The facts, which are undisputed, indicate that in 1975, Constance L. Persinger purchased some land along Route 3 in Putnam County. The land was entered under her name for tax purposes. After Ms. Persinger's marriage to Troy E. Dunnaway, Constance Persinger Dunnaway and Mr. Dunnaway executed a deed of trust, dated August 15, 1980, naming the Citizens National Bank as beneficiary to secure a note in the principal sum of $86,644.80. The deed of trust specified the grantors as "Troy E. Dunnaway and Constance L. Dunnaway (formerly Constance L. Persinger)." The deed of trust was recorded in the Putnam County Trust Deed Book 181, page 644. However the deed of trust was indexed only under the name of Dunnaway and not Persinger, the name used to identify the subject land for tax purposes.[1] All parties

---

1. *W.Va.Code,* 39–2–2 [1931], provides, in pertinent part:

    In the appropriate general index in the office of the clerk of the county court, to the extent that the same has been or shall be provided, shall be indexed the names of all grantors and grantees of deeds, trust deeds, released deeds, contracts, leases, or other writings.... It shall be the duty of every clerk for whose office a general index has been provided, to

agree that the Bank's deed of trust could only be located in the index under the name of Dunnaway, a name not used to identify the property for tax purposes.

After the Dunnaways failed to pay the 1982 taxes on the land, the property became delinquent.[2] There is no dispute that the county sheriff met the posting and publishing requirements of *W. Va. Code*, 11A–2–13 [1983] and *W. Va. Code*, 11A–3–2 [1985].[3] However, the sheriff did not send the Bank a notice of the tax delinquency because the deed of trust was not properly indexed. Because there were no bids received at the public auction held on November 14, 1983, the sheriff purchased the property for the State.[4]

Upon the expiration of the statutory eighteen-month redemption period, the property became "irredeemable and subject to transfer or sale under the provisions of sections 3 and 4, article XIII of the Constitution." *W. Va. Code*, 11A–3–8 [1947]. There is no dispute that the commissioner and the deputy commissioner of forfeited and delinquent lands followed the statutory procedures found in *W. Va. Code*, 11A–4–1 *et seq.* [1971]. As required by *W. Va. Code*, 11A–4–12 [1967],[5] the deputy commissioner published in two local newspapers a notice

---

make all proper entries in each general index in his office within a reasonable time after making the recordation to which the index entry pertains.

2. The Bank, an innocent party, could have protected itself by using the common practice of requiring the Dunnaways to pay taxes through an escrow account managed by the Bank. The deed of trust given by the Dunnaways authorizes such an escrow account.

3. *W. Va. Code*, 11A–2–13 [1983], provides, in pertinent part:
A copy of each of the delinquent lists shall be posted at the front door of the courthouse of the county at least two weeks before the session of the county commission at which they are to be presented for examination. At the same time a copy of each list shall be published as a Class I-O legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county. Only the aggregate amount of the taxes owed by each person need be published. To cover the cost of preparing, publishing and posting the delinquent lists, a charge of two dollars and fifty cents shall be added to the taxes and interest already due on each item listed.
*W. Va. Code*, 11A–3–2 [1985] provides, in pertinent part:
On or before September tenth of each year, the sheriff shall prepare a second list of delinquent lands, which shall include all real estate in his county remaining delinquent as of September first, together with a notice of sale, in form or effect as follows:
[Form omitted]
The sheriff shall publish the list and notice prior to the sale date fixed in the notice as a Class III-O legal advertisement in compliance with the provisions of article three [§ 54–3–1 et seq.] [sic], chapter fifty-nine of this code, and the publication area for such publication shall be the county. In addition to such publication, no less than thirty days prior to the sale the sheriff shall send a notice of such delinquency by certified mail to the last known address of each person whose taxes are delinquent and to each person having a lien on real property upon which the taxes are due, as disclosed by a valid lien instrument duly recorded in the office of the clerk of the county commission: Provided, That in a case where one owner owns more than one parcel of real property upon which taxes are delinquent, the sheriff may, at his option, mail separate notices to the owner and each lienholder for each parcel, or may prepare and mail to the owner and each lienholder a single notice which pertains to all such delinquent parcels. If he elects to mail only one notice, that notice shall set forth a legally sufficient description of all parcels of property on which taxes are delinquent. In no event shall failure to receive the mailed notice by the landowner or lienholder affect the validity of the title of the property conveyed if it is sold pursuant to section four [§ 11A–3–4], article three, chapter eleven-a of this code.

4. *W. Va. Code*, 11A–3–6 [1941], provides:
If no person present bids the amount of taxes, interest and charges due on any real estate offered for sale, the sheriff shall purchase it on behalf of the State for the amount due.

5. *W. Va. Code*, 11A–4–12 [1967], provides in pertinent part:
Upon the institution of a suit as provided in section ten [§ 11A–4–10] of the article, the clerk of the circuit court shall enter an order of publication, without the filing of any affidavit by the deputy commissioner as required in other cases. Such order of publication shall give the style of the suit, as, State of West Virginia v. A.B. et al.; shall state that the object of the suit is to obtain a decree of the circuit court ordering the sale for the benefit of the school fund of all lands included in the suit; shall list all such lands, setting forth as to each item its local description, the former owner in whose name the land was forfeited,

of the suit for the sale of the tract. The deputy commissioner also attempted to notify Constance Persinger of the impending sale by registered letter addressed to the property. Mrs. Dunnaway was living at the property, but did not accept the registered letter. As required by *W.Va.Code*, 11A–4–23 [1967],[6] the deputy commissioner published a notice of sale in two local newspapers. Because the deputy commissioner did not know of the Bank's deed of trust, none of the publications named the Bank as having an interest in the property and the Bank received no other notice.

On January 27, 1986, the circuit court entered an order authorizing the sale of the property by the State for the benefit of the school fund.[7] Mr. Hughes, a defendant, purchased the property for $2,000 at an auction held on February 28, 1986. A tax deed was executed and delivered to Mr. Hughes by the deputy commissioner on March 4, 1986.

After the Bank filed suit to set aside the tax deed, the circuit court found that facts were not in dispute and entered summary judgment in favor of Mr. Hughes. The Bank appealed to this Court asserting that the tax deed should be set aside because the Bank did not receive the constitutionally required notice of a tax sale.

II

In *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), we discussed the constitutional due process requirements for notice of a tax sale of real property.

There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice.

Syllabus point 1, *Lilly Id.* In determining what notice is constitutionally required prior to the sale of real property for delinquent taxes, we relied upon several United States Supreme Court decisions that discussed the due process notice requirements. In *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), a case involving a due process challenge to Indiana's tax sale statute by a mortgagee, the United States Supreme Court found that notice of a tax sale by publication and posting violated due process when the mortgagee could be reasonably identified from public records.

Where the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not

or was returned delinquent and sold, or escheated, as the case may be, and the names of such other defendants as may be interested therein; and shall require all the named defendants, and all unknown parties who are or may be interested in any of the lands included in the suit to appear within one month after the date of the first publication thereof and do what is necessary to protect their interests. The order shall be published as a Class III–O legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county.

6. *W.Va.Code*, 11A–4–23 [1967], provides, in pertinent part:

In order to encourage attendance and bidding at the sale, the deputy commissioner shall, beginning at least fifteen days before the day on which the court has ordered that any lands be sold, publish a list of all such lands as a Class III–O legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county. At the head of the list shall be a notice of the sale in form or effect as follows:

[Form omitted]

The list shall set forth as to each item its quantity, local description and, except in the case of waste and unappropriated lands, the name of the former owner.

7. After the redemption period expires, *W.Va. Code*, 11A–4–1 *et seq.* [1971], authorizes the deputy commissioner of forfeited and delinquent lands to sell certain lands, including land purchased by the State at a tax sale. *W.Va.Code*, 11A–4–3 [1947]. The proceeds of the sale are remitted to the school fund.

satisfy the mandate of *Mullane* [*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)].

*Id.* at 798, 103 S.Ct. at 2711.

Although Mennonite Board of Missions' address was not listed in the mortgage, the United States Supreme Court found that the address "could have been ascertained by reasonably diligent efforts." *Mennonite Bd. of Missions, supra* at 798 n. 4, 103 S.Ct. at 2711 n. 4. The United States Supreme Court then noted, "We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Id.* at 799 n. 4, 103 S.Ct. at 2711 n. 4.

A thread running through all the United States Supreme Court notice cases, beginning with *Mullane, supra,* is the mandate that under the due process clause a *reasonable* effort must be made to provide actual notice of an event that may significantly affect a legally protected property interest. In *Mullane,* the United States Supreme Court stated that, at a minimum, due process requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* 339 U.S. at 313, 70 S.Ct. at 656. The United States Supreme Court further observed:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Id.* at 314, 70 S.Ct. at 657.

In the case of a missing or unknown person, the United States Supreme Court in *Mullane* allows the "employment of an indirect and even a probably futile means of notification [because it] is all the situation permits and creates no constitutional bar to a decree foreclosing their rights." *Id.* at 317, 70 S.Ct. at 658.

More recently the United States Supreme Court in *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), made clear that a reviewing court must "balanc[e] the 'interest of the state' and 'the individual interest sought to be protected by the Fourteenth Amendment' ... The focus is the reasonableness of the balance, and, as *Mullane* itself made clear, whether a particular method of notice is reasonable depends upon the particular circumstances." *Pope, supra* at 484, 108 S.Ct. at 1344. The United States Supreme Court concluded, "For creditors who are not 'reasonably ascertainable,' publication notice can suffice." *Id.* at 490, 108 S.Ct. at 1347. *See Davis Oil Co. v. Mills,* 873 F.2d 774, 790 (5th Cir.1989) *cert. denied,* 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989) (holding that requiring "a seizing creditor to wind its way through a potentially complex maze of leases and assignments" was not required "to ensure receipt or notice"); *Goldhofer Fahrzeugwerk GmbH & Co. v. U.S.,* 885 F.2d 858 (Fed.Cir.1989) *cert. denied,* — U.S. —, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990) (holding that mail notice of liquidation was not constitutionally required because posting was as certain to ensure actual notice to an importer as mail notice); *S.E.C. v. Tome,* 833 F.2d 1086 (2d Cir.1987) *cert. denied,* 486 U.S. 1014, 108 S.Ct. 1751, 100 L.Ed.2d 213 (1988) (holding that notice published in "International Herald Tribune" was adequate for foreign defendants sued for insider trading); *S.E.C. v. Foundation Hai,* 736 F.Supp. 465, 470 (S.D.N.Y.1990) *rev'd on other grounds,* 910 F.2d 1028 (2nd Cir.1990) (holding service on foreign defendants' U.S. brokerage firms for overseas delivery on the defendants comported with due process).

In both *Mennonite Bd. of Missions, supra,* and *Lilly, supra,* the mortgage and deed of trust, respectively, were publicly recorded and no question was raised concerning the reasonableness of the efforts needed to identify their interest. In the present case, on the other hand, it is undisputed that the Bank's deed of trust was publicly recorded but *improperly indexed*

so that the existence of the deed of trust *could not be ascertained by reasonably diligent efforts.* Although extraordinary efforts might have discovered the deed of trust, extraordinary efforts are not constitutionally required.

Furthermore, because the State has a compelling interest in an effective system for the collection of taxes and in assuring good title to the purchasers of delinquent property from the State, we find the constructive notice that was given to be reasonable under these circumstances. *See Calhoun v. Jennings,* 512 N.E.2d 178, 184 (Ind.1987) (holding that following the expiration of the redemption period, due process did not require "actual notice be given of either the lapse of the redemption period or the subsequent issuance of the tax deed"); *Tracy v. Chester County, Tax Claim Bureau,* 507 Pa. 288, 489 A.2d 1334, 1339 (1985) (holding that after a mailed tax notice was not delivered because of an inaccurate address, "a reasonable effort would have been to make inquiry of the [State partnership] records ..."); *Mt. Sexton Properties, Inc. v. Dept. of Revenue,* 306 Or. 465, 760 P.2d 1320 (1988) (holding that taxpayers were not entitled to personal notice of an appeal of an administrative determination of the value of forest land); *Wells Fargo Credit Corp. v. Ziegler,* 780 P.2d 703, 705 (Okl.1989) (holding the absence of a return receipt for the certified mailing of a tax sale notice should have alerted the treasurer "to exercise reasonable diligence in locating Wells Fargo"); *Pruitt v. Ferguson,* 224 Va. 507, 297 S.E.2d 714 (1982) (holding that a scrivener's mistake in recording the name "Bush" rather than "Rush" did not invalidate a tax sale that published the notice against "Bush"); *Wylie v. Patton,* 111 Idaho 61, 720 P.2d 649, 654 (App.1986) (holding that a mortgage

not "in the public record" at the time the treasurer mailed the notice was not entitled to notice); *Schwartz v. Dey,* 780 S.W.2d 42 (Mo.1989) (holding that former owners were not denied due process because notices of delinquent taxes and proposed sale were sent to them at the address on the deed).

In the present case, we hold that the lack of personal notice to the Bank was caused by an improperly indexed deed of trust that could not be located by reasonably diligent efforts, and, therefore, no due process violation exists to vitiate the sale.[8] For the foregoing reasons, the judgement of the Circuit Court of Putnam County is affirmed.[9]

Affirmed.

---

8. Equitable principles imply that the loss need not necessarily fall upon the last innocent party in the chain of unfortunate circumstances. It is unlikely, for example, that a family would be ousted from their homestead because of a similar negligent act of a clerk.

9. Because the clerk of the county commission improperly indexed the Bank's deed of trust, the Bank may have a claim against the clerk of the

county commission. *W.Va.Code,* 6–2–10 [1977], provides:

> [E]very ... clerk of a county commission ... shall give bond with good security, to be approved, unless otherwise provided by law, by the county commission of the county in which such officer is to act. The penalty of the bond of ... the clerk of the county commission ... [shall be] not less than ten thousand nor more than fifty thousand dollars....